UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CAROL BARMORE,

Plaintiff,

v.

COUNTY FAIR, INC.,

Defendant.

**DECISION and ORDER**

**03-CV-888A(F)**

---

APPEARANCES:

LINDY KORN, ESQ.
Attorney for Plaintiff
1904 Liberty Building
Buffalo, New York 14202

DAMON & MOREY LLP
Attorneys for Defendant
R. SCOTT DeLUCA, of Counsel
298 Main Street
1000 Cathedral Place
Buffalo, New York 14202-4096

## JURISDICTION

This case was referred to the undersigned by the Honorable Richard J. Arcara on January 23, 2003 for pretrial dispositive motions. The matter is presently before the court on Defendant's motion to dismiss the Complaint (Doc. No. 4), filed January 16, 2004, Plaintiff's motion to file an amended complaint (Doc. No. 10), filed February 22, 2004, and Defendant's motion to strike the Amended Complaint Plaintiff filed as of right (Doc. No. 15), filed on December 6, 2004.[1]

---

[1] Although Defendant's motion to dismiss the Complaint is dispositive, the court addresses the motion in this Decision and Order as the determination that Plaintiff's Amended Complaint was properly filed as of right renders the motion to dismiss moot and without prejudice, which does not result in a determination of a nondispositive motion as precluded by 28 U.S.C. § 636(b)(1)(B). Furthermore, Defendant's motion to strike the Amended Complaint pursuant to Fed. R. Civ. P. 12(f) is nondispositive.

**BACKGROUND**

Plaintiff Carol Barmore commenced this employment discrimination action on November 25, 2003, under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-5 *et seq.* ("Title VII"), alleging she was sexually harassed, subjected to a hostile work environment and terminated from her employment with Defendant County Fair, Inc., based on her sex. Plaintiff also asserts pendent state law claims under the New York Human Rights Law, New York Executive Law § 290 *et seq.*

Defendant moved, on January 16, 2004, to dismiss the Complaint for failure to state a claim arguing that Plaintiff failed to timely exhaust administrative remedies relative to the instant federal claims, and urging the court not to exercise supplemental jurisdiction over the pendent state claims. In support of the motion, Defendant filed an affidavit by R. Scott DeLuca, Esq., dated January 16, 2004, (Doc. No. 5) ("DeLuca Affidavit"), and a memorandum of law (Doc. No. 6) ("Defendant's Memorandum"). In opposition to Defendant's motion to dismiss, Plaintiff filed, on February 9, 2004, an affirmation by Lindy Korn, Esq. (Doc. No. 9) ("Korn Affirmation"),[2] a motion for leave to file an amended complaint (Doc. No. 10), and a memorandum of law both in response to the motion to dismiss and in support of the motion to amend (Doc. No. 11) ("Plaintiff's Response"). On March 5, 2004 Defendant filed a memorandum of law both in opposition to Plaintiff's motion to amend and in further support of Defendant's motion

---

*See Whittaker v. NIU Board of Trustees*, 2004 WL 524949, * 1 (N.D.Ill. March 12, 2004) (considering motion to strike pursuant to Rule 12(f) nondispositive); *Indiana Gas Company, Inc. v. Aetna Casualty & Surety Company*, 1995 WL 866417, * 1 n. 1 (N.D. Ind. July 12, 1995) (same); *Seneca Nation of Indians v. State of New York*, 1994 WL 688262, *1-2 (W.D.N.Y. Oct. 28, 1994) (same).

[2] The Korn Affirmation was refiled on February 24, 2004 (Doc. No. 12) to correct an electronic filing error.

to dismiss (Doc. No. 13) ("Defendant's Reply").

On November 14, 2004, Plaintiff filed an Amended Complaint as of right (Doc. No. 14) ("Amended Complaint"). Defendant, on December 6, 2004, moved to strike the Amended Complaint, filing in support an affidavit by R. Scott DeLuca, Esq. (Doc. No. 16) ("DeLuca Affidavit in Support of Striking the Amended Complaint"). In response to the motion to strike, Plaintiff filed, on December 28, 2004, a memorandum of law (Doc. No. 18) ("Plaintiff's Response in Opposition to Striking the Amended Complaint"). Oral argument was deemed unnecessary.

Based on the following, Defendant's motion to dismiss the Complaint is DISMISSED as moot without prejudice; Plaintiff's motion for leave to file an amended complaint is DISMISSED as moot; and Defendant's motion to strike the Amended Complaint is DENIED.

## FACTS[3]

Plaintiff Carol Barmore ("Barmore"), was initially hired on October 18, 1994, by Defendant County Fair, Inc. ("Defendant" or "County Fair"), as a cashier associate, a part-part time position. In 1999, Barmore was promoted to a full time position as a Department Manager position at County Fair Store # 76 ("Store # 76") in Gerry, New York. In 2000, County Fair Area Manager David Brink ("Brink"), transferred Barmore to another Department Manager position at County Fair Store # 78 ("Store # 78") in Fredonia, New York, where Everett McChesney ("McChesney") was Store Manager.

[3] Taken from the pleadings and motion papers filed in this action.

Because Store # 78 is larger that Store # 76, upon transferring to Store # 78, Barmore's salary also increased. In November and December 2001, Brink, anticipating Barmore's promotion to Assistant Store Manager at Store # 78, had Barmore attend Assistant Store Manager classes in Erie, Pennsylvania. In January 2002, Barmore was promoted to Assistance Store Manager at Store # 78.

In March 2002, Brink temporarily transferred Barmore to County Fair Store # 63 ("Store # 63"), in Warren, Pennsylvania, to clean and organize Store # 63. Upon conducting a review of Store # 63 on April 11, 2002, Brink and Store # 63 District Manager John Woodworth commended Barmore for her work while assigned to Store # 63. While Barmore was assigned to Store # 63, a managerial opening, in which Barmore was interested, arose at County Fair Store # 10 ("Store # 10"), in Warren, Pennsylvania, but the position allegedly was given to another, less qualified person. In June 2002, Barmore, at the direction of Brink and at McChesney's request, returned to the Assistant Store Manager position at Store # 78. Barmore maintains that at that time, Brink, McChesney, and County Fair District Manager Bruce Sterling ("Sterling") verbally promised to promote Barmore to the next Store Manager position.

The Amended Complaint contains some allegations not presented in the original complaint regarding numerous requests McChesney made to Barmore, both before and after her assignment to Store # 63,[4] to join McChesney for lunch away form the store. Amended Complaint ¶ 20. Barmore maintains she always rejected McChesney's

[4] Barmore alleges in the Amended Complaint that McChesney's invitations to join him for lunch away from the store "both before and after her assignment to Store # 10." Amended Complaint ¶ 20. As the only County Fair store to which Barmore was temporarily assigned was Store # 63, the court construes the reference to "Store # 10" as a typographical error.

requests to meet away from the store. *Id*. ¶ 21.

In August 2002, McChesney allegedly became romantically involved with a fast food manager ("the fast food manager") at Store # 78, which Barmore claims resulted in sexual based employment related preferences toward the fast food manager and a hostile work environment as to Barmore by McChesney. Specifically, Barmore, in August 2002, acting in her Assistant Store Manager capacity, reprimanded the fast food manager for tardiness and poor work performance. After the reprimand, McChesney allegedly began to demean Barmore and obstruct her job performance by calling her sexually derogatory names in front of other employees who then acted insubordinately toward Barmore. McChesney also allegedly permitted the fast food manager to call Barmore "the Bitch," at which the other employees would laugh. In late August 2002, Barmore complained to District Manager Sterling about McChesney's harassment who assured Barmore he would speak with McChesney; Sterling also reminded Barmore she was in line for a store manager position. Subsequent to Barmore's complaint to Sterling about McChesney, McChesney allegedly retaliated against Barmore by delegating managerial duties for which Barmore had been responsible to other subordinate employees, thereby relegating Barmore to non-managerial functions.

In September 2002, Barmore, at McChesney's request, went at Store # 78 to clean the store's cooler during her time off and, upon arriving at the store, filled her vehicle's fuel tank with gasoline from Store # 78's tank. Barmore spent six hours cleaning the cooler and, prior to leaving, paid McChesney $ 20 for the gasoline she had pumped into her vehicle. Barmore maintains that it although her gasoline purchase was, technically, in violation of County Fair policy, it was common practice for Store #

78 employees to fill their vehicle's fuel tanks with gasoline from Store # 78's tank and that McChesney condoned the practice. At a meeting held on September 16, 2002 with District Manager Sterling, McChesney, and Barmore, McChesney screamed profanities at Barmore and accused Barmore of stealing a tank of gasoline. At the meeting, Sterling allegedly also admitted that McChesney's relationship with the fast food manager was inappropriate and in violation of company policies, and that all issues discussed at the meeting were to be dropped.

At the end of September 2002, while McChesney was on vacation, Barmore, acting upon the advice Sterling, reprimanded the fast food manager for being out of uniform. The fast food manager allegedly responded to the reprimand by yelling at Barmore "I'll have your f—ing job," tore up the reprimand sheet and left work without permission, causing a staff shortage at Store # 78.

On October 8, 2002, District Manager Sterling suspended Barmore for attempting to steal $ 20 of gasoline based on the early September 2002 incident. Later that same week, Barmore was summoned to County Fair's corporate offices where she met with Ron Baumgard ("Baumgard"), manager of County Fair's Policy and Procedure and Theft Control Departments. Barmore maintains that Baumgard ignored her attempts to demonstrate that McChesney routinely violated County Fair policies, including the policy forbidding employees from purchasing gasoline from County Fair's tank, as well as the policy forbidding McChesney's relationship with the fast food manager.

In both the Complaint and the Amended Complaint, Barmore alleges that Area Manager Brink telephoned Barmore on October 11, 2002 to terminate Barmore's

employment based on the attempted gasoline theft allegation, although the attempted theft allegation was neither reduced to writing, nor investigated, in violation of County Fair's policy. Complaint ¶ 28; Amended Complaint ¶¶ 53, 64, 72. In the Amended Complaint, Barmore makes further allegations regarding the termination of her employment with County Fair, including that during the October 11, 2002 telephone conversation with Brink, Barmore stated that Sterling had previously resolved the matter in her favor, to which Brink replied that Sterling "doesn't call the shots; Carl Zalewski does," referring to County Fair's Vice President of Operations, and that the decision to terminate Barmore ultimately rested with Zalewski. Amended Complaint ¶¶ 54-56. In a telephone conversation with Zalewski on October 14, 2002, Barmore stated that she "believed she had been targeted for discharge because of the relationship between Mr. McChesney and the Fast Food Manager, and that she was the victim of illegal sexual discrimination." Amended Complaint ¶ 57. According to Barmore, Zalewski replied that he had spoken with Brink and McChesney and "was inclined to let CAROL BARMORE go." *Id*. ¶ 58 (capitals in original). Barmore maintains she then advised Zalewski that she had documentation proving McChesney routinely violated company policy, that Zalewski refused to look at her evidence, although Zalewski agreed to review the documentation concerning Barmore's prior complaints about McChesney. *Id*. ¶¶ 59-60.

Barmore also alleges in the Amended Complaint that on October 28, 2002, County Fair Assistant Vice President and Assistant General Counsel Chris Orton sent Barmore a letter requesting Barmore return "'certain articles of County Fair property' to Defendant [County Fair]." Amended Complaint ¶ 61 (bracketed text added). According to Barmore, the "articles of County Fair property" referred to the documents Barmore

had described to Zalewski, *id*. ¶ 62, and Barmore mailed the documentation concerning her prior complaints of sexual harassment as Orton directed to County Fair on November 14, 2002. *Id*. ¶ 63.

Barmore further alleges that in early November 2002 she went to Store # 78 to return her uniforms. Amended Complaint ¶ 65. McChesney was present when Barmore arrived at Store # 78, and when Barmore gave McChesney the uniforms and reminded him that he owed her $ 30 for prior purchases that Barmore had not received, McChesney refused to repay the money, called Barmore a "f---ing b-----," and laughed. *Id*. ¶¶ 65-69. After Barmore persisted in claiming McChesney owed her $ 30, McChesney handed Barmore the money. *Id*. ¶ 70.

Barmore alleges that to her knowledge no investigation pursuant to County Fair's policy was ever conducted of the complaints she initially made to Brinks or Sterling regarding the sexually hostile work environment or her further complaints regarding retaliation for complaining about the sexually hostile work environment. Amended Complaint ¶ 71. Barmore further maintains that upon receiving Barmore's documentation regarding the hostile work environment and sexual harassment Barmore had endured at County Fair, Zalewski failed to investigate Barmore's claims. *Id*. ¶ 72.

On August 19, 2003, Barmore filed a complaint with the Equal Employment Opportunity Commission ("the EEOC") charging County Fair with sex discrimination and retaliation ("EEOC complaint").[5] On August 28, 2003, the EEOC issued a Notice of

[5] DeLuca Affidavit Exhibit A; Korn Affirmation Exhibit A.

Right to Sue letter ("Right to Sue Letter"),[6] advising that based upon its investigation, the EEOC was unable to conclude that Barmore had been subject to any prohibited employment discrimination and further advising Barmore of her right to commence a legal action under federal law. This action followed.

## DISCUSSION

County Fair originally moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss the Complaint for failure to state a claim, arguing that Barmore's filing of the EEOC complaint on August 19, 2003, occurred more than 300 days after the termination of her County Fair employment on October 11, 2002, and was thus untimely under 42 U.S.C. § 2000e-5(e). DeLuca Affidavit ¶¶ 5-6, 13-15; Defendant's Memorandum at 4-8. County Fair further argues that if Barmore's federal employment discrimination claims are dismissed as untimely, the court should decline to exercise its supplemental jurisdiction over the pendent state claims. DeLuca Affidavit ¶ 16; Defendant's Memorandum at 9-10. Barmore asserted in opposition to the motion to dismiss and in support of Barmore's motion for leave to file an amended complain that County Fair's alleged failure to investigate Barmore's claims of sexual harassment and hostile work environment between October 8 and November 12, 2002 constituted a continuation of the illegal discrimination to which Plaintiff was subjected prior to her discharge, that Barmore alleged in the EEOC complaint that the charged employment discrimination continued through October 28, 2002, which is less than 300 days prior to the filing of

[6] DeLuca Affidavit Exhibit B; Korn Affirmation Exhibit B.

the EEOC complaint on August 19, 2003, and that relevant case law demonstrates Barmore's argument concerning the continuation of the alleged employment discrimination through October 28, 2003 is not futile. Korn's Affirmation ¶¶ ; 10-18; Plaintiff's Response at 3-10. Barmore further maintains that, in any event, her state law claims are timely. Plaintiff's Response at 10. County Fair argues in support of the motion to dismiss, and in opposition to Plaintiff's motion seeking leave to file an amended complaint, that the proposed amended complaint erroneously relies on the continuing violation doctrine to bring the alleged conduct occurring after Barmore's employment was terminated on October 11, 2002 into the 300-day limitations period for filing a complaint with the EEOC, Defendant's Reply at 4-7, and that the Amended Complaint's newly asserted allegations are not reasonably related to the allegations alleged in Barmore's EEOC complaint insofar as such allegations do not pertain to the alleged hostile work environment given that such allegations refer to discrete actions occurring *after* Barmore's discharge. Defendant's Reply at 7-11.

On November 14, 2004, Barmore filed the Amended Complaint as of right, asserting that a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) is not a responsive pleading for purposes of Fed. R. Civ. P. 15(a) permitting a party to amend a pleading "once as a matter of course at any time before a responsive pleading is served." Fed. R. Civ. P. 15(a) (underlining added). County Fair moved to strike the Amended Complaint pursuant to Fed. R. Civ. P. 12(f), asserting that the new allegations contained therein are immaterial and impertinent as they are subject to dismissal for the same reasons, *i.e.*, that the pleadings are outside the 300 day limitations period, County Fair proffered in support of the motion to dismiss and in opposition to Barmore's

motion for leave to file an amended complaint. DeLuca Affidavit in Support of Striking the Amended Complaint ¶¶ 16-18. County Fair further challenges Barmore's filing of the Amended Complaint without providing any explanation or excuse given the pending motions to dismiss and for leave to file an amended complaint, *id*. ¶ 19, and requests that, should the court permit the filing of the amended complaint as of right, the court deem Defendant's papers filed in support of the motion to dismiss and in opposition to the motion for leave to file an amended complaint as "equally applicable to Plaintiff's Amended Complaint." *Id*. ¶ 20. In opposing Defendant's motion to strike, Barmore argues that the allegations regarding the termination of Barmore's employment with County Fair, construed in Barmore's favor as required on a motion to dismiss, demonstrate an issue of fact as to when Barmore was actually discharged from her County Fair employment. Plaintiff's Response in Opposition to Striking the Amended Complaint at 7. The court initially addresses Barmore's filing of the Amended Complaint as of right because, if the Amended Complaint was properly filed as of right, such determination will moot Defendant's motion to dismiss the original complaint and Plaintiff's motion seeking leave to file an amended complaint.

As relevant, Fed. R. Civ. P. 15(a) provides that "a party may amend the party's pleading once as a matter of course at any time before a responsive pleading is served . . . ." The Second Circuit has held that the filing of a motion to dismiss does not preclude the filing of an amended complaint as of right pursuant to Rule 15(a). *LeGrand v. Evan*, 702 F.2d 415, 417 (2d Cir. 1983). *See Barbara v. New York Stock Exchange, Inc.*, 99 F.3d 49, 56 (2d Cir. 1996) (stating in *dicta* that district court's denial of motion to amend complaint as moot, upon granting defendant's motion to dismiss for

failure to state a federal claim conferring federal question jurisdiction was improper because plaintiff was entitled to amend complaint as of right as motion to dismiss is not a responsive pleading within meaning of Rule 15(a) and citing 6 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE § 1483, at 584-85 (2d ed. 1990), Fed. R. Civ. P. 15(a), and *Washington v. New York City Bd. of Estimate*, 709 F.2d 792, 795 (2d Cir.), *cert. denied*, 464 U.S. 1013 (1983)). Significantly, County Fair does not argue otherwise.

Although County Fair moved to dismiss the original complaint pursuant to Rule 12(b)(6) for failure to state a claim, County Fair never filed an answer to the original complaint. As the motion to dismiss is not a responsive pleading within the meaning of Rule 15(a), the Amended Complaint was properly filed as of right. As such, both County Fair's motion to dismiss the original complaint is DISMISSED as moot without prejudice, and Barmore's motion seeking leave to file an amended complaint is also DISMISSED as moot. Accordingly, the only remaining motion before the court is Defendant's motion to strike the Amended Complaint pursuant to Rule 12(f).

In support of its motion to strike the Amended Complaint, Defendant essentially argues that Barmore's employment with County Fair occurred on October 11, 2002, more than 300 days prior to the filing of Barmore's EEOC complaint on August 19, 2003, and Barmore's allegations in the Amended Complaint regarding incidents after October 11, 2002, cannot be relied upon as supporting Barmore's employment discrimination and retaliation claims insofar as such alleged conduct occurred after Barmore's discharge, DeLuca Affidavit in Support of Striking the Amended Complaint ¶¶ 16-20 (incorporating by reference Defendant's Memorandum at 6-8, and

Defendant's Reply at 4-7), and that the newly asserted allegations in the Amended Complaint are not reasonably related to the allegations found in Barmore's EEOC complaint. DeLuca Affidavit in Support of Striking the Amended Complaint ¶ 20 (incorporating by reference Defendant's Reply at 7-11). Barmore, in opposition to the motion to strike, argues that the allegations regarding Barmore's "vague" conversations with her County Fair supervisors, along with County Fair's failure to comply with its policy requiring written notice of termination establish that "it is virtually impossible to ascertain precisely when Ms. Barmore's employment was terminated." Plaintiff's Response in Opposition to Striking the Amended Complaint at 3-4. Barmore also asserts that although her claims regarding the failure of both Brink and Zalewski to investigate Barmore's complaints of sexual discrimination and harassment, and her claim that she had been targeted for discharge in retaliation for such complaints cannot establish a continuing violation after her discharge, Barmore's employment continued through "early November 2002," which is within 300 days of the filing of the EEOC complaint on August 19, 2003. *Id*. at 4-7. Barmore further asserts that should the District Court dismiss her federal employment discrimination and retaliation claims as untimely, the District Court, in the interest of conserving judicial resources should, nevertheless, exercise it supplemental jurisdiction over the state law claims for which the relevant limitations period is three years. *Id*. at 7.

Defendant moves to strike the Amended Complaint pursuant to Fed. R. Civ. P. 12(f) which provides that

> [u]pon motion made by a party before responding to a pleading or, if no responsive pleading is permitted by these rules, upon motion made by a party within 20 days after the service of the pleading upon the party or upon the court's

> own initiative at any time, the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.

The striking of a pleading pursuant to Rule 12(f), however, "is usually reserved for those cases in which the complain is so confused, ambiguous, vague or otherwise unintelligible that its true substance, if any, is well disguised." *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Accordingly, only those pleadings that have "no bearing on the subject matter of litigation, and whose inclusion will result in prejudice to the opposing party may be stricken pursuant to Rule 12(f). *See First City Nat. Bank v. Federal Dep. Ins. Co.*, 730 F.Supp. 501, 514 (E.D.N.Y. 1990) (quoting *FRA S.p.A. v. Surg-O-Flex of America, Inc.*, 415 F.Supp. 421, 427 (S.D.N.Y. 1976)). In the instant case, County Fair moves to strike the new allegations of the Amended Complaint on the basis that such allegations are immaterial and impertinent and are subject to dismissal for the same reasons proffered in support of Defendant's motion to dismiss, *i.e.*, the new allegations fail to establish any basis on which to find that Barmore's EEOC complaint was timely filed. DeLuca Affidavit in Support of Motion to Strike the Amended Complaint ¶ 18.

Title VII requires that a complaint charging employment discrimination must be filed within 300 days of the defendant's last act in furtherance of the alleged "unlawful employment practice." 42 U.S.C. § 2000e-5(e)(1). The term "practice" as used in 42 U.S.C. § 2000e-5(e)(1) has been interpreted "to apply to a discrete act or single 'occurrence,' even when it has a connection to other acts." *National Railroad Passenger Corp. v. Morgan*, 536 U.S. 101, 111 (2002). Discrete discriminatory acts falling within the statutory 300-day period cannot make discriminatory acts falling

outside the time period timely, and the "mere continuity" of employment alone is also "'insufficient to prolong the life of a cause of action for employment discrimination.'" *Id*. at 112-13 (quoting *Delaware State College v. Ricks*, 449 U.S. 250, 257 (1980)). Rather, "[e]ach discrete discriminatory act starts a new clock for filing charges alleging that act." *Morgan*, *supra*, at 113. The Supreme Court, however, has differentiated between discrete acts, such as termination, failure to promote and refusal to hire, which are easy to identify, and hostile environment claims which, by their very nature, involve repeated conduct. *Id*. at 114-15.

When a hostile work environment claim is alleged, such claim is "based on the cumulative effect of individual acts." *Morgan*, *supra*, at 115. "A hostile work environment claim is composed of a series of separate acts that collectively constitute one 'unlawful employment practice.'" *Id*. at 117 (quoting 42 U.S.C. § 2000e-5(e)(1)). Furthermore, "[p]rovided that an act contributing to the claim occurs within the filing period, the entire time period of the hostile environment may be considered by a court for the purposes of determining liability." *Id*. Such act, however, need not be the last act and

> [a]s long as the employer has engaged in enough activity to make out an actionable hostile environment claim, an unlawful employment practice has 'occurred,' even if it is still occurring. Subsequent events, however, may still be part of the one hostile work environment claim and a charge may be filed at a later date and still encompass the whole.

*Id*.

*See Petrosino v. Bell Atlantic*, 385 F.3d 210, 220 (2d Cir. 2004) (alleged discriminatory events occurring outside 300-day limitations period for filing Title VII hostile work environment employment discrimination claim with EEOC could be considered in

support of employee's claim as employee had also alleged some gender-hostile conduct occurring within the limitations period).

In the instant case, it is undisputed that Barmore filed her EEOC complaint on August 18, 2003. Counting backward, 300 days from August 18, 2003 is October 22, 2002. As such, for Barmore's EEOC complaint to have been timely filed, the Amended Complaint must allege some conduct occurring on or after October 22, 2002 which, if true, would constitute an incident of employment discrimination based on a hostile work environment. Further, for such conduct to constitute actionable employment discrimination under Title VII, Barmore must have been employed when the alleged conduct occurred. Thus it is necessary to determine whether the Amended Complaint sufficiently alleges that Barmore's employment with County Fair was not terminated before October 22, 2002.

Specifically, Barmore alleged in her EEOC complaint that her employment termination did not occur until October 28, 2002, which is less than 300 days prior to the filing of the EEOC complaint on August 18, 2003. Amended Complaint ¶ 61 (alleging that by letter dated October 28, 2002, County Fair Assistant Vice President and Assistant General Counsel requested Barmore return "'certain articles of County Fair property'" to County Fair). Barmore maintains that such allegation, if true, proves that her termination did not occur until October 28, 2002. Plaintiff's Response in Opposition to Striking the Amended Complaint at 5.

The Second Circuit has held in the context of an employment discrimination case that "[t]he 300-day period, in the case of a discriminatory discharge, starts running on the date when the employee receives a definite notice of the termination, not upon his

discharge." *Miller v. Intern. Tel. & Tel. Corp.*, 755 F.2d 20, 23 (2d Cir.) (citing cases), *cert. denied*, 474 U.S. 851 (1985). The notice of termination, however, may be oral. *Miller*, *supra*, at 23 (citing cases).

In the instant case, Barmore's alleges that on October 11, 2002, Area Manager Brink telephone Barmore to terminate Barmore's employment based on the attempted gasoline theft allegation. Complaint ¶ 28; Amended Complaint ¶¶ 53, 64, 72. Barmore, however, further alleges that during the October 11, 2002 telephone conversation with Brink, Barmore stated that Sterling had previously resolved the matter in her favor, to which Brink replied that whether to terminate Barmore was to be decided by County Fair Vice President of Operations Zalewski. Amended Complaint ¶¶ 54-56. Barmore alleges that she spoke with Zalewski on October 14, 2002, and told Zalewski she believed she was the victim of illegal sexual discrimination and had been targeted for discharge because of McChesney's relationship with the Fast Food Manager. Amended Complaint ¶ 57. Barmore alleges that during the telephone conversation, Zalweski equivocally stated that he "was inclined to let CAROL BARMORE go." *Id*. ¶ 58. Barmore further alleges that Zalewski refused to look at Barmore's documentation regarding her assertions that McChesney routinely violated company policy, but that Zalewski agreed to review the documentation concerning Barmore's prior complaints about McChesney. *Id*. ¶¶ 59-60. Construing, as required, *Todd v. Exxon Corp.*, 275 F.3d 191, 197 (2d Cir. 2001), these allegations in the light most favorable to Plaintiff, a reasonable jury could conclude that neither the October 11, 2002 conversation with Brink nor the October 14, 2002 conversation with Zalewski provided Barmore with definite notice that her employment with County Fair was terminated.

Furthermore, Barmore's allegation that County Fair Assistant Vice President and Assistant General Counsel Orton, by letter sent to sent Barmore on October 28, 2002 requesting Barmore return "'certain articles of County Fair property' to Defendant [County Fair]," Amended Complaint ¶ 61 (bracketed text added), could be interpreted as the first communication, whether oral or in written form, from County Fair providing Barmore with definite notice of the termination of her employment. The court therefore finds there is an issue of fact as to when Barmore was provided with definite notice of her employment termination. Accordingly, these allegations are neither immaterial or impertinent to the issue of the timeliness of Barmore's EEOC complaint and, as such, provide no basis for striking any portion of the Amended Complaint.

Should it ultimately be determined by a trier of fact that Barmore was not provided with definite notice of her termination until October 28, 2002, then all of Barmore's claims are timely filed insofar as Barmore alleges that the termination of her employment was but one incident indicative of the hostile work environment in which she allegedly worked, *Morgan*, *supra*, at 117, and that such termination was intended to retaliate against Barmore for complaining about McChesney's alleged improper conduct toward her. Accordingly, there is no basis for striking the Amended Complaint pursuant to Rule 12(f) and Defendant's motion to strike is DENIED.

## **CONCLUSION**

Based on the foregoing, Defendant's motion to dismiss the Complaint (Doc. No. 4) is DISMISSED as moot without prejudice; Plaintiff's motion for leave to file an amended complaint (Doc. No. 10), is DISMISSED as moot; and Defendant's motion to

strike the Amended Complaint (Doc. No. 15) is DENIED.

SO ORDERED.

/s/ *Leslie G. Foschio*

______________________________________
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED: April 22, 2005
Buffalo, New York